STANLEY S. ARKIN (Cal. Bar No. 058951)
sarkin@arkin-law.com
ARKIN KAPLAN RICE LLP
590 Madison Avenue, 35th Floor
New York, New York 10022
Tel:   (212) 333-0200
Fax:   (212) 333-2350

3530 Bayberry Lane
Malibu, California 90265
Tel:   (917) 250-8988
Fax:   (310) 456-0528

*Attorneys for Defendant*
HIS SERENE HIGHNESS PRINCE ALBERT II OF MONACO, aka Albert
Alexandre Louis Pierre Grimaldi

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT ERINGER, an individual<br><br>Plaintiff,<br><br>vs.<br><br>HIS SERENE HIGHNESS PRINCE ALBERT II OF MONACO, aka Albert Alexandre Louis Pierre Grimaldi, an individual, and DOES 1 through 100 inclusive,<br><br>Defendants. | Case No.  CV 09-8032 (GAF) (RC)<br><br>**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION TO DISMISS THE COMPLAINT AND MOTION TO STRIKE**<br><br>**DATE:**          December 7, 2009<br><br>**TIME:**          9:30 a.m.<br><br>**COURTROOM:**  740<br><br>**JUDGE:**        Hon. Gary A. Feess |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................(ii)

INTRODUCTION AND FACTUAL BACKGROUND............................................ 1

    A.    The Parties.......................................................................... 1

    B.    Plaintiff's Lawsuit ................................................................ 3

    C.    Plaintiff's Causes of Action ................................................... 3

ARGUMENT ......................................................................................... 5

I.    PLAINTIFF'S COMPLAINT MUST BE DISMISSED OR STAYED BECAUSE DEFENDANT IS SHIELDED BY HEAD-OF-STATE IMMUNITY ................................................................................. 5

II.    ADDITIONAL GROUNDS WARRANTING DISMISSAL ........................... 9

    A.    Foreign Sovereign Immunities Act ........................................ 9

    B.    Personal Jurisdiction ......................................................... 11

III.    PURSUANT TO FED. R. CIV. P. 12(F), THE COURT SHOULD STRIKE FROM PLAINTIFF'S COMPLAINT ALL IMMATERIAL, IMPERTINENT AND SCANDALOUS MATTER........... 16

    A.    The Legal Standard ........................................................... 18

    B.    Issues To Be Decided ........................................................ 20

CONCLUSION ..................................................................................... 21

# TABLE OF AUTHORITIES

## Cases

*Alicog v. Kingdom of Saudi Arabia,*
  860 F. Supp. 379 (S.D.Tex. 1994)........................................................... 6, 7

*Altmann v. Republic of Austria,*
  317 F.3d 954, 969 (9th Cir. 2002)............................................................ 12

*Anonymous v. Anonymous,*
  181 A.D.2d 629, 581 N.Y.S.2d 776 (1st Dep't 1992)................................ 8

*Asahi Metal Industry Co., Ltd. v. Superior Court of California, Solano County,*
  480 U.S. 102 (1987) ................................................................................ 16

*Blaxland v. Commonwealth Director of Public Prosecutions,*
  323 F.3d 1198 (9th Cir. 2003)................................................................ 2, 9

*Burger King Corp. v. Rudzewicz,*
  471 U.S. 462 (1985) ................................................................................ 14

*Burger v. Health Ins. Plan of Greater New York,*
  684 F. Supp. 46 (S.D.N.Y. 1988)................................................. 19, 20, 21

*Cairns v. Franklin Mint Co.,*
  24 F. Supp. 2d 1013 (C.D. Cal. 1998)..................................................... 20

*Cassirer v. Kingdom of Spain,*
  580 F.3d 1048 (9th Cir. 2009).......................................................... 10, 12

*Chuidian v. Philippine Nat. Bank,*
  912 F.2d 1095 (9th Cir. 1990)................................................................... 9

*Clark v. Goodwill Industries of Hawaii, Inc.,*
  CV. No. 09-00184 DAE-LEK, 2009 WL 3050277
  (D. Haw. Sept. 21, 2009)................................................................. 20, 21

*Data Disc, Inc v. Systems Tech. Assocs. Inc.,*
  557 F.2d 1280 (9th Cir. 1977)................................................................. 14

*Doe v. Holy See,*
  557 F.3d 1066 (9th Cir. 2009)................................................................. 12

*Fantasy, Inc. v. Fogerty,*
  984 F.2d 1524 (9th Cir. 1993).................................................................... 18, 19

*Frontera Resources Azerbaijan Corp. v. State Oil Co. of Azerbaijan Republic,*
  582 F.3d 393 (2d Cir. 2009) ........................................................................ 12

*Frontier Oil Corp. v. RLI Ins. Co.,*
  153 Cal.App.4th 1436, 63 Cal.Rptr.3d 816 (Cal.App. 2 Dist. 2007)................... 15

*Fujitsu-ICL Systems, Inc. v. Efmark Service Co. of Illinois, Inc.,*
  No. 00-CV-0777 W(LSP), 2000 WL 1409760 (S.D.Cal. June 29, 2000) ........... 14

*Gregorian v. Izvestia,*
  871 F.2d 1515 (9th Cir. 1989)..................................................................... 12

*Holden v. Canadian Consulate,*
  92 F.3d 918 (9th Cir. 1996)........................................................................ 11

*Impulsive Music v. Pomodoro Grill, Inc.,*
  No. 08-CV-6293, 2008 WL 4998474 (W.D.N.Y. Nov. 19, 2008) ................ 18, 20

*In re Estate of Ferdinand Marcos Human Rights Litig.,*
  94 F.3d 539 (9th Cir. 1996)........................................................................ 10

*In re Grand Jury Proceedings,*
  817 F.2d 1108 (4th Cir. 1987)..................................................................... 5, 7

*In re Terrorist Attacks on September 11, 2001,*
  538 F.3d 71 (2d Cir. 2008) .......................................................................... 9

*International Shoe Co. v. Washington,*
  326 U.S. 310 (1945) ............................................................................. 12, 13

*Jungquist v. Sheikh Sultan Bin Khalifa Al Nahyan,*
  115 F.3d 1020 (D.C. Cir. 1997) ................................................................... 9

*Kilroy v. Windsor,*
  No. C 78-291, 1978 U.S. Dist. LEXIS 20419 (N.D. Ohio Dec. 7, 1978)............... 6

*Lafontant v. Aristide,*
  844 F. Supp. 128 (E.D.N.Y. 1994)............................................................. 6, 7

*Leutwyler v. Office of Her Majesty Queen Rania Al-Adbullah,*
  184 F. Supp.2d 277 (S.D.N.Y. 2001)............................................................ 6

DEFENDANT HIS SERENE HIGHNESS PRINCE ALBERT II OF MONACO'S
MOTION TO DISMISS THE COMPLAINT AND MOTION TO STRIKE

*Matar v. Dichter*,
   500 F. Supp.2d 284, 290 (S.D.N.Y. 2007) ........................................................ 6, 9

*Mathews v. Diaz*,
   426 U.S. 67 (1976) ........................................................................................ 13

*Meadows v. Dominican Republic*,
   628 F. Supp. 599 (N.D.Cal. 1986) ................................................................. 12

*Monegasque de Reassurances S.A.M. (Monde Re) v. Nak Naftogaz of Ukraine*,
   158 F. Supp.2d 377 (S.D.N.Y. 2001) .............................................................. 16

*Montagne v. Ag Venture Fin. Servs., Inc.*,
   Adv. No. 08-1022, 2009 WL 32394 (Bankr. D. Vt. Jan. 5, 2009) ....................... 19

*Morse v. Weingarten*,
   777 F. Supp. 312 (S.D.N.Y. 1991) ............................................................. 18, 20

*Park v. Shin*,
   313 F.3d 1138 (9th Cir. 2002) ..................................................................... 9, 11

*Parrish v. Sollecito*,
   No. 01 Civ.5420, 2002 WL 1072227 (S.D.N.Y. May 28, 2002) .................... 18, 19

*Peterson v. Kennedy*,
   771 F.2d 1244 (9th Cir.1985) ....................................................................... 15

*Price v. Socialist People's Libyan Arab Jamahiriya*,
   294 F.3d 82 (D.C. Cir. 2002) ....................................................................... 16

*Proyecfin de Venezuela, S.A. v. Banco Industrial de Venezuela, S.A.*,
   760 F.2d 390 (2d Cir.1985) .......................................................................... 16

*Pugh v. Socialist People's Libyan Arab Jamahiriya*,
   Civ. 02-02026, 2006 U.S. Dist LEXIS 58033 (D.D.C. May 11, 2006) ................. 8

*Republic of Austria v. Altmann*,
   541 U.S. 677 (2004) ...................................................................................... 9

*Roe v. Unocal Corp.*,
   70 F. Supp.2d 1073 (C.D. Cal. 1999) .............................................................. 2

*Segni v. Commercial Office of Spain*,
   835 F.2d 160 (7th Cir. 1987) ....................................................................... 11

*Siderman de Blake v. Republic of Argentina,*
    965 F.2d 699 (9th Cir. 1992)................................................................. 10

*Sidney-Vinstein v. A.H. Robins Co.,*
    697 F.2d 880 (9th Cir. 1983)................................................................. 18

*Skadegaard v. Farrell,*
    578 F. Supp. 1209 (D.N.J. 1984)........................................................... 21

*Tachiona v. United States,*
    386 F.3d 205 (2d Cir. 2004).................................................................... 9

*Texas Trading & Milling Corp. v. Federal Republic of Nigeria,*
    647 F.2d 300 (2d Cir.1981)................................................................... 12

*The Schooner Exchange v. McFaddon,*
    11 U.S. 116 (1812) ................................................................................ 5

*Theo H. Davies & Co., Ltd.,*
    174 F.3d at 974 *aff'd,* 817 F.2d 517 (9th Cir. 1987)............................ 12

*Thos. P. Gonzalez Corp. v. Consejo Nacional de Produccion de Costa Rica,*
    614 F.2d 1247 (9th Cir. 1980)......................................................... 13, 15

*United States v. Calderon-Segura,*
    512 F.3d 1104 (9th Cir. 2008), *cert. denied,* 129 S.Ct. 119 (2008)...... 13

*United States v. Noriega,*
    117 F.3d 1206 (11th Cir. 1997)............................................................... 7

*Verlinden B.V. v. Central Bank of Nigeria,*
    461 U.S. 480 (1983) ......................................................................... 5, 6, 9

*Wilkerson v. Butler,*
    229 F.R.D. 166 (E.D. Cal. 2005).................................................... 18, 20

*Yahoo! Inc. v. La Ligue Contra Le Racisme et L'Antisemitisme,*
    433 F.3d 1199 (9th Cir. 2006)........................................................ 13, 15

*Ye v. Zemin,*
    383 F.3d 620 (7th Cir. 2004).................................................................. 7

*Yousef v. Samantar,*
    552 F.3d 371 (4th Cir. 2009).................................................................. 9

DEFENDANT HIS SERENE HIGHNESS PRINCE ALBERT II OF MONACO'S
MOTION TO DISMISS THE COMPLAINT AND MOTION TO STRIKE

(v)

## Other Authorities

Fed. R. Civ. P. 12 ........................................................................... 1, 16, 18, 21

28 U.S.C. § 517 ........................................................................................... 7

28 U.S.C. § 1330(a) ............................................................................... 10, 12

28 U.S.C. §1604 ......................................................................................... 9

28 U.S.C. §§ 1605 to 1607 ........................................................................ 10

28 U.S.C. §1608 ........................................................................................ 12

Cal.Civ.Code § 1646 ................................................................................ 15

*U.S. Department of State website* at:
  http://www.state.gov/r/pa/ei/bgn/3397.htm#relations .............................. 2

*U.S. Department of State website* at
  http://www.state.gov/r/pa/ei/bgn/3397.htm#gov ....................................... 8

By virtue of his position as Monaco's sovereign and head-of-state, His Serene Highness Prince Albert II of Monaco ("Defendant" or "H.S.H. Prince Albert II of Monaco" or "Prince Albert") is immune from the jurisdiction of courts in the United States.  Notwithstanding that fact, Plaintiff has filed this meritless lawsuit, which couches a modest breach of contract claim in a Complaint replete with grandiose, scurrilous and largely irrelevant allegations, redolent of a crude "shake-down" or blatant extortion.[1]

Pursuant to Fed. R. Civ. P. 12(b), Defendant respectfully moves this Court to dismiss the Complaint – or in the alternative, stay the proceedings – on the grounds that: (i) as the head-of-state of the Principality of Monaco, Defendant is entitled to absolute immunity from this lawsuit; and (ii) Defendant is also protected by the Foreign Sovereign Immunities Act, pursuant to which this Court lacks subject-matter and personal jurisdiction over Defendant.  Defendant further moves, pursuant to Fed. R. Civ. P. 12(f) to strike from the Complaint the immaterial, impertinent and scandalous matter liberally littering Plaintiff's pleading.

## INTRODUCTION AND FACTUAL BACKGROUND

### A.    The Parties

The Principality of Monaco is a sovereign city-state, bordered by France and the Mediterranean Sea.  Defendant is the Principality's head-of-state.

---

[1]    Exhibit C of Defendant's Notice of Removal (filed 11/03/09) demonstrates Plaintiff's effort to obtain monies to which he was not entitled in exchange for a promise of confidentiality.  This exhibit is a letter sent by Plaintiff to Defendant on September 23, 2009, in which Plaintiff demands approximately €400,000 (or $600,000) in exchange for keeping private the contents of the unfiled complaint.  In exacting revenge for being frustrated in the pursuit of money to which he is not entitled, Plaintiff has demonstrated his malignant intent; the filed Complaint contains a demand of only €40,000 (approximately $60,000) – a fraction of the amount originally demanded by Plaintiff.  *n.b.,* Rules 1.2 and 3.1 of the ABA Model Rules of Professional Conduct govern counsel's role in this conduct.

On April 6, 2005, Prince Rainier III of Monaco died, and His Serene Highness Prince Albert II of Monaco succeeded him as head-of-state and Sovereign Prince of Monaco. (Compl. ¶ 33.)[2] On July 12, 2005, following a period of official mourning, Defendant was sworn in as sovereign ruler of his subjects. Defendant's enthronement process culminated with a ceremony at the Prince's Palace on November 19, 2005.

The United States recognizes Monaco as a sovereign and independent state. According to the U.S. Department of State, Monaco and the U.S. enjoy "excellent relations, which both countries seek to maintain and strengthen."[3] In December 2006, a year-and-a-half after Defendant assumed his role as head-of-state, the U.S. and Monaco agreed to full diplomatic relations. *Id*.

Plaintiff is an individual residing in Santa Barbara, California. (Compl. ¶ 1.) According to the Complaint, Defendant engaged Plaintiff beginning in 2002 to investigate certain matters of concern to the Principality. (Compl. ¶ 5.) This relationship, which was never formalized in a written document, continued through approximately 2007. Between 2005 and 2007, Plaintiff allegedly performed tasks for the benefit of H.S.H. Prince Albert II of Monaco and the Principality.

---

[2]     Unless otherwise indicated, all of the "facts" discussed in this motion are taken from Plaintiff's Complaint (the "Complaint" or "Compl."). For the limited purpose of this motion, Plaintiff's assertions are assumed to be true, but Defendant reserves the right to challenge any of Plaintiff's assertions when appropriate to do so. *See, e.g., Blaxland v. Commonwealth Director of Public Prosecutions*, 323 F.3d 1198, 1201 (9th Cir. 2003) (assuming facts alleged in complaint to be true in reviewing a motion to dismiss based on sovereign immunity under the Foreign Sovereign Immunities Act).

[3]     *See Department of State website* at: http://www.state.gov/r/pa/ei/bgn/3397.htm#relations.  This Court may take judicial notice of these facts. *Roe v. Unocal Corp.*, 70 F. Supp.2d 1073, 1078 (C.D. Cal. 1999) (taking judicial notice of the fact that the United States conducts diplomatic relations with Burma based on review of Department of State materials).

B.     **Plaintiff's Lawsuit**

On September 23, 2009, Plaintiff sent Defendant a letter requesting certain payments to which Plaintiff claimed he was entitled. With that letter, Plaintiff enclosed an unfiled civil complaint and indicated that he would file the complaint if Defendant failed to make the demanded payments.[4]

On October 5, 2009, Plaintiff filed the civil Complaint in this matter in California state court.  On that same day, Plaintiff sent, by facsimile and U.S. mail, a summons and a copy of the Complaint to Defendant's Palace in Monaco.

On October 20, 2009, Plaintiff delivered to Defendant's counsel a copy of the summons and Complaint.  The following day, in a letter to Plaintiff's counsel, Defendant's counsel acknowledged service of the Complaint and summons.

On November 3, 2009, Defendant removed the Complaint to this Court.

C.     **Plaintiff's Causes of Action**

In his Complaint, Plaintiff contends that Defendant is liable for breach of contract and misrepresentation.  The legally pertinent allegations of the Complaint can be summarized as follows:  In June 2002, Plaintiff allegedly entered into an oral agreement to provide intelligence-related services to Defendant. (Compl. ¶¶ 5-7.) Plaintiff avers that he was compensated on a quarterly basis at an agreed-upon rate, which varied during the course of the next several years from €40,000 to €100,000. (*Id.* ¶ 6.)  These payments were allegedly made at the beginning of each quarter, before any work was done for the quarter. (*See Id.* ¶ 147.)  In late 2006, Plaintiff claims to have received conflicting information over whether the agreement was being terminated. (*Id.* ¶¶ 114-15, 122.)  In June 2007, Plaintiff alleges that he asked

---

[4]     The unfiled version of the complaint was largely the same as the filed version, but some minor differences exist.  Both versions are replete with irrelevant, scandalous and impertinent material intended to embarrass Defendant and the Principality of Monaco.

1    whether he should continue his duties, and Defendant allegedly said yes. (*Id.* ¶

2    138.)  In August 2007, Plaintiff alleges that Defendant asked that Plaintiff reduce

3    his fee to €40,000 and limit his work to maintaining his "liaison relationships." (*Id.*

4    ¶ 139.)

5         Finally, the Complaint alleges that in December 2007, Plaintiff sent

6    Defendant an invoice for the first quarter of 2008, seeking payment of €40,000.[5]

7    (*Id.* ¶ 141.)  Plaintiff claims he worked that quarter without receiving payment, and

8    then terminated his services. (*Id.*)  According to the Complaint, Defendant did not

9    provide payment for that quarter or respond to Plaintiff's communications. (*Id.* ¶¶

10   141-42.)  This €40,000 payment is the only payment alleged to be at issue.

11         Plaintiff contends that Defendant[6] breached the parties' agreement "by failing

12   to pay Plaintiff the agreed compensation of €40,000 for the first quarter of 2008 due

13   and payable on January 1, 2008." (*Id.* ¶ 147.)  Plaintiff further alleges that

14   Defendant "falsely represented that [he] would pay the Plaintiff €40,000 for his

15   services during the first quarter of 2008 when [he] in fact had no intention of paying

16   him." (*Id.* ¶ 151.)  The Complaint does not allege by whom this representation was

17   made or when.

18        The rest of the Complaint consists of superfluous and scandalous details with

19   no relevance to either of these claims.  The Complaint describes, in rambling and

20   occasionally rant-like detail, various investigations and projects allegedly

21   undertaken by Plaintiff from mid-2002 through mid-2007 – a period pre-dating by

22   several months the quarter for which payment is sought.  In countless paragraphs

23   with no material connection to Plaintiff's causes of action, some thirty-plus

24

25   ———————

     [5]    No allegation is made that Defendant breached any obligations to Plaintiff

26   during the five-year period between June 2002 and December 2007.

27    [6]    In addition to H.S.H. Prince Albert II of Monaco, the complaint names Does

    1 through 100 as defendants.

28

individuals and groups (including Russian president Vladimir Putin, the Freemasons, and Defendant himself) are accused of various criminal, illicit, or immoral activities ranging from bribery and criminal fraud to rape, money laundering, and international arms dealing. (*See, e.g.,* Compl. ¶¶ 8, 21, 32, 45, 47, 51, 63, 68, 68, 133, 134.) Numerous irrelevant paragraphs are devoted entirely to Defendant's alleged sexual activities, personal character flaws, and general lack of morality. (*See, e.g., id.* ¶¶ 25, 27, 32.) Plaintiff also inexplicably quotes from his own diary and boasts of the many "bad guys" who are out to "eliminate him." (*Id.* ¶¶ 91, 113, 117.) Neither these "projects" nor any of the "bad guys" or acts associated with them are claimed to have any connection with Defendant's alleged non-payment.

## ARGUMENT

### I. PLAINTIFF'S COMPLAINT MUST BE DISMISSED OR STAYED BECAUSE DEFENDANT IS SHIELDED BY HEAD-OF-STATE IMMUNITY

The United States has long recognized that foreign sovereigns and heads of state are immune from actions and lawsuits filed in U.S. courts. *See The Schooner Exchange v. McFaddon,* 11 U.S. 116 (1812); *Verlinden B.V. v. Central Bank of Nigeria,* 461 U.S. 480, 486 (1983) ("For more than a century and a half, the United States generally granted foreign sovereigns complete immunity from suit in the courts of this country."). The underlying rationale for both head-of-state immunity and sovereign immunity is to "promote comity among nations by ensuring that leaders can perform their duties without being subject to detention, arrest or embarrassment in a foreign country's legal system." *In re Grand Jury Proceedings,* 817 F.2d 1108, 1110 (4th Cir. 1987) (citing Note, *Resolving the Confusion over Head-of-State Immunity; the Defined Rights of Kings,* 86 Colum.L.Rev. 169, 171-79 (1986)), *cert. denied,* 484 U.S. 890 (1987).

As a result of the *Schooner* decision, foreign sovereign immunity

---

1    determinations were consistently deferred to the Executive Branch, which

2    "ordinarily requested immunity in all actions against friendly foreign sovereigns."

3    *Verlinden B.V.,* 461 U.S. at 486.  In 1952, the Department of State adopted a new

4    policy restricting sovereign immunity to claims involving a foreign sovereign's

5    public acts.  *See Letter from Jack B. Tate, Acting Legal Advisor, Department of*

6    *State, to Acting Attorney General Philip B. Perlman,* (May 19, 1952), reprinted in

7    26 Dept. of State Bull. 984-985 (1952), and in *Alfred Dunhill of London Inc., v.*

8    *Cuba,* 425 U.S. 682, 711 (1976) (Appendix 2 of Justice White's opinion) ("Tate

9    Letter").  (*See* Ex. A. to the accompanying Affirmation of Stanley S. Arkin in

10   Support of Defendant's Motion to Dismiss the Complaint and Motion to Strike,

11   dated November 10, 2009 ("Arkin Aff.")).

12         Head-of-state immunity is a doctrine of customary international law, which

13   provides that a foreign head-of-state is afforded absolute immunity from personal

14   jurisdiction in United States courts.  *See Matar v. Dichter,* 500 F. Supp.2d 284, 290

15   (S.D.N.Y. 2007), *aff'd,* 563 F.3d 9 (2d Cir. 2009) ("'A head-of-state recognized by

16   the United States government is absolutely immune from personal jurisdiction in

17   United States courts' regardless of whether the claims arise from official or private

18   acts.") (quoting *Lafontant v. Aristide,* 844 F. Supp. 128, 131-32 (E.D.N.Y. 1994));

19   *Leutwyler v. Office of Her Majesty Queen Rania Al-Adbullah,* 184 F. Supp.2d 277

20   (S.D.N.Y. 2001) (lawsuit against Queen Rania of Jordan alleging, among other

21   things, breach of contract and defamation, dismissed because the Queen enjoyed

22   head-of-state immunity); *Alicog v. Kingdom of Saudi Arabia,* 860 F. Supp. 379

23   (S.D.Tex. 1994), *aff'd,* 79 F.3d 1145 (5th Cir. 1996); *Kilroy v. Windsor,* No. C 78-

24   291, 1978 U.S. Dist. LEXIS 20419 (N.D. Ohio Dec. 7, 1978) (Prince Charles,

25   Prince of Wales absolutely immune from civil rights lawsuit).[7]

26   ―――――――――
     [7]    Because head-of-state immunity is absolute, the fact that some of the alleged
27   acts occurred before Defendant was head-of-state is of no consequence.  Absolute
28   immunity for a sitting head-of-state is a policy-based doctrine acknowledging the

DEFENDANT HIS SERENE HIGHNESS PRINCE ALBERT II OF MONACO'S
MOTION TO DISMISS THE COMPLAINT AND MOTION TO STRIKE

1   The decision regarding a grant of immunity is vested exclusively in the
2   Executive Branch. *See Ye v. Zemin*, 383 F.3d 620, 626 (7th Cir. 2004), *cert. denied*,
3   544 U.S. 975 (2005) ("a determination by the Executive Branch that a foreign head-
4   of-state is immune from suit is conclusive and a court must accept such a
5   determination"); *United States v. Noriega,* 117 F.3d 1206, 1212 (11th Cir. 1997)
6   (court declined to grant head-of-state immunity to Manuel Noriega where the
7   Executive Branch had "manifested its clear sentiment that Noriega should be denied
8   head-of-state immunity" by prosecuting him); *Lafontant,* 844 F. Supp. at 132-33.

9   Within the Executive Branch, the U.S. Department of State is responsible for
10   determining the applicability of head-of-state immunity in cases involving lawsuits
11   against sovereign heads of state.  When asked to make such a determination, the
12   Executive Branch "(1) explicitly suggests immunity; (2) expressly declines to
13   suggest immunity; or (3) offers no guidance." *Noriega,* 117 F.3d at 1212.  When
14   suggesting immunity for a head-of-state, the Department of State's position takes
15   the form of a "suggestion of immunity" letter submitted by the U.S. Attorney
16   General to the Court, pursuant to 28 U.S.C. § 517 ("Interests of United States in
17   Pending Suits").  All United States courts are bound by suggestions of immunity
18   submitted by the Executive Branch; thus, upon receipt of such a suggestion of
19   immunity, a court *must* dismiss a case pending against a head-of-state.  *Ye,* 383 F.3d
20   at 630 (lawsuit against Jiang Zemin dismissed upon Executive Branch's assertion of
21   head-of-state immunity on Zemin's behalf); *Alicog,* 860 F. Supp. at 381 (lawsuit
22   against King Fahd of Saudi Arabia dismissed because "as the head of state, [the
23   King] is immune from the judicial power of the United States"); *Lafontant,* 844 F.
24   Supp.128 (State Department's suggestion of immunity on behalf of Jean-Bertrand

25   _____

26   comity among nations and the necessity to protect sovereigns representing their
    countries in foreign states. *See generally, Lafontant,* 844 F. Supp.128; *In re Grand*
27   *Jury Proceedings,* 817 F.2d 1108.  Thus, if a defendant is a recognized head-of-state
28   at the time of the lawsuit, head-of-state immunity must be granted.

DEFENDANT HIS SERENE HIGHNESS PRINCE ALBERT II OF MONACO'S
MOTION TO DISMISS THE COMPLAINT AND MOTION TO STRIKE

7

Aristide compelled dismissal of civil rights action); *Anonymous v. Anonymous*, 181 A.D.2d 629, 581 N.Y.S.2d 776 (1st Dep't 1992) (New York State court required to dismiss divorce action where U.S. Department of State submitted a suggestion of immunity letter).

Prince Albert is Monaco's sovereign and head-of-state, and he is recognized as such by the United States. *See U.S. Department of State website* at http://www.state.gov/r/pa/ei/bgn/3397.htm#gov.  On November 5, 2009, Ambassador of the Principality of Monaco to the United States Gilles Noghes delivered a letter to the U.S. Department of State requesting that it provide to this Court a "suggestion of immunity" letter designating Defendant a head-of-state entitled to absolute immunity from this lawsuit. (*See* Arkin Aff., Ex. B.)[8]

Because H.S.H. Prince Albert II of Monaco qualifies for head-of-state immunity and this matter is currently under consideration by the Department of State, this Court must either (i) dismiss the case outright for lack of jurisdiction; or (ii) stay all proceedings until receipt of Department of State's official suggestion of immunity. *See Pugh v. Socialist People's Libyan Arab Jamahiriya*, Civ. 02-02026, 2006 U.S. Dist LEXIS 58033 (D.D.C. May 11, 2006) (court concluded it was required to stay proceedings against Muammar Qadhafi where the Attorney General was still actively considering its position on whether Qadhafi was entitled to head-of-state immunity), *later proceeding at* 2009 U.S.App. Lexis 4142 (D.C. Cir. 2009) (dismissing complaint against remaining defendants based on Executive Branch's suggestion of immunity).

---

[8]    On November 6, 2009, the Department of State notified counsel for Defendant that it had received the Ambassador's request and had contacted the Justice Department in order to begin processing the request. (Arkin Aff. ¶ 5.)

DEFENDANT HIS SERENE HIGHNESS PRINCE ALBERT II OF MONACO'S
MOTION TO DISMISS THE COMPLAINT AND MOTION TO STRIKE

## II.   ADDITIONAL GROUNDS WARRANTING DISMISSAL

Notwithstanding our submission that head-of-state immunity is dispositive in this instance, Defendant notes that additional grounds for dismissal exist.

### A.   Foreign Sovereign Immunities Act

In 1976, Congress enacted the Foreign Sovereign Immunities Act ("FSIA"), which codified the Tate Letter's theory of restrictive immunity and provided a "comprehensive statute containing a 'set of legal standards governing claims of immunity in every civil action against a foreign sovereign, or its political subdivisions, agencies, or instrumentalities.'" *See Republic of Austria v. Altmann,* 541 U.S. 677, 691 (2004) (quoting *Verlinden B.V.,* 461 U.S. at 488). Under the FSIA, foreign states are "immune from the jurisdiction of the courts of the United States and of the States except" for certain delineated actions set forth in the statute. 28 U.S.C. § 1604.

The Ninth Circuit has joined a majority of the circuits in holding that the FSIA applies to individuals acting in their official capacities for foreign states. *See In re Terrorist Attacks on September 11, 2001,* 538 F.3d 71 (2d Cir. 2008) (FSIA granted immunity from suit to Saudi Arabian princes for acts performed in their official capacities); *Blaxland,* 323 F.3d 1198; *Park v. Shin,* 313 F.3d 1138 (9th Cir. 2002); *Jungquist v. Sheikh Sultan Bin Khalifa Al Nahyan,* 115 F.3d 1020 (D.C. Cir. 1997); *Chuidian v. Philippine Nat. Bank,* 912 F.2d 1095 (9th Cir. 1990) (individual bank official acting as agency or instrumentality of foreign state); *but see Yousef v. Samantar,* 552 F.3d 371 (4th Cir. 2009), *cert granted,* -- S.Ct. --, 2009 WL 1725968 (Sept. 30, 2009) (individuals alleged to have committed acts of torture not "foreign state" for FSIA purposes).[9]

---

[9]   FSIA's plain language and legislative history suggest that the statute may *not* apply to individuals who are heads-of-state, *see Matar,* 500 F. Supp.2d at 290 (applying the FSIA to the former director of Israel's General Security Service and noting that the FSIA did not supplant head-of-state immunity, which "involves a different analysis than that conducted for lower ranking officials"); *Tachiona v.*

DEFENDANT HIS SERENE HIGHNESS PRINCE ALBERT II OF MONACO'S
MOTION TO DISMISS THE COMPLAINT AND MOTION TO STRIKE

1    Under the FSIA, subject-matter jurisdiction over foreign sovereigns exists

2    only under certain circumscribed exceptions, as set forth in 28 U.S.C. §§ 1605 to

3    1607. 28 U.S.C. § 1330(a).

4    No such exceptions exist here. Most all of the exceptions found in § 1605 of

5    the FSIA are not applicable on their face.[10] Nor does the "commercial activity"

6    exception under § 1605(a)(2) apply.[11]

7    The commercial activity exception only applies when a foreign state is acting

8    as a private party in this country, not acting as a governmental entity. *Cassirer v.*

9    *Kingdom of Spain,* 580 F.3d 1048, 1057-58 (9th Cir. 2009); *In re Estate of*

10   *Ferdinand Marcos Human Rights Litig.,* 94 F.3d 539, 546 (9th Cir. 1996); *Siderman*

11

12   *United States,* 386 F.3d 205 (2d Cir. 2004) (questioning whether the FSIA was

13   intended to supplant head-of-state immunity, but reaching no conclusion and instead

14   granting diplomatic immunity to President Robert Mugabe). However, if this Court

     declines to recognize Defendant as Monaco's head-of-state and qualified for

15   absolute immunity, the Court then will be compelled to analyze Defendant's

16   immunity as an individual under the FSIA.

17   [10]   The exceptions set forth in 28 U.S.C. §§ 1606 and 1607 are not relevant in

18   this case because they pertain to the extent of liability of a foreign state when

     jurisdiction has been established (§1606) and cases instituted by a foreign sovereign

19   (§1607).

20   [11]   Immunity exceptions under 28 U.S.C. §1605 include cases involving: a

     waiver of immunity (§ 1605(a)(1)); commercial activities carried on in the United

21   States or causing a direct effect here (§1605(a)(2)); property taken in violation of

     international law (§ 1605(a)(3)); immovable, inherited or gifted property rights for

22   property in the United States (§ 1605(a)(4)); non-commercial tortious acts occurring

23   in the United States (§ 1605(a)(5); arbitration agreements (§ 1605(a)(6)); maritime

     (§ 1605(b)); and foreclosure of preferred mortgages (§ 1605(d)). The commercial

24   activity exception provides that a foreign state may be subject to jurisdiction in U.S.

25   courts only for claims relating to (i) the foreign state's commercial activities within

     the United States; (ii) acts performed in the United States in connection with the

26   foreign state's commercial activities elsewhere; or (iii) commercial activities outside

27   the United States that cause a direct effect in the United States. 28 U.S.C. §

     1605(a)(2).

28

DEFENDANT HIS SERENE HIGHNESS PRINCE ALBERT II OF MONACO'S
MOTION TO DISMISS THE COMPLAINT AND MOTION TO STRIKE

1  *de Blake v. Republic of Argentina,* 965 F.2d 699, 708-09 (9th Cir. 1992), *cert.*

2  *denied,* 507 U.S. 1017 (1993).

3      In the employment context, if the relationship relates to a uniquely

4  governmental function, then the employment is not regarded as commercial activity;

5  the commercial activity exception applies only where the employee is serving a non-

6  governmental, or private party, function. *See Park,* 313 F.3d 1138 (Deputy Consul

7  General of Korean Consulate not entitled to sovereign immunity for claims relating

8  to the employment of a personal domestic servant); *Holden v. Canadian Consulate,*

9  92 F.3d 918 (9th Cir. 1996), *cert. denied,* 519 U.S. 1091 (1997) (foreign states

10  entitled to immunity for claims relating to the hiring of civil service, diplomatic and

11  military personnel); *Segni v. Commercial Office of Spain,* 835 F.2d 160 (7th Cir.

12  1987) (foreign state not entitled to immunity for claims arising out of an employee

13  hired to provide marketing services for Spanish wine).

14      In this case, Plaintiff – according to his own Complaint – was hired by

15  Defendant to "establish and operate an intelligence agency."[12]  (Compl. ¶ 1.)  This is

16  an archetypal governmental function.  The Complaint is replete with references to

17  Plaintiff's official and governmental duties, (*see, e.g.,* Compl. ¶¶ 46, 64, 85, 90, 95,

18  102, 108, 131, Ex. B.), which can only be viewed as relating to official

19  governmental acts that can only be carried out by a sovereign nation state.  Thus, the

20  claims do not relate to a "commercial activity" under the FSIA, and the Complaint

21  must be dismissed.

22      **B.    Personal Jurisdiction**

23      An additional, independent ground for dismissal is that this Court lacks

24  personal jurisdiction over Defendant.

25

26  [12]    As discussed *supra* at n. 2, for the purposes of this motion we accept

27  Plaintiff's description of his employment.  However, Defendant in no way endorses
    this description.

28

DEFENDANT HIS SERENE HIGHNESS PRINCE ALBERT II OF MONACO'S
MOTION TO DISMISS THE COMPLAINT AND MOTION TO STRIKE

Courts have repeatedly held that foreign sovereigns must be afforded the protections of the Constitution's Due Process Clause.[13] *See Theo H. Davies & Co., Ltd.*, 174 F.3d at 974 *aff'd*, 817 F.2d 517 (9th Cir. 1987), *cert. denied*, 484 U.S. 976 (1987); *see also Meadows v. Dominican Republic*, 628 F. Supp. 599, 603 (N.D.Cal. 1986) (citing *Texas Trading & Milling Corp. v. Federal Republic of Nigeria*, 647 F.2d 300, 313-15 (2d Cir.1981), *cert. denied*, 454 U.S. 1148 (1982)).  These protections include satisfaction of the traditional minimum contacts standard set out in *International Shoe Co. v. Washington*, 326 U.S. 310 (1945) in order to establish personal jurisdiction under the FSIA.  *Gregorian v. Izvestia*, 871 F.2d 1515, 1528 (9th Cir. 1989), *cert. denied*, 493 U.S. 891 (1989).  "'[T]he relevant area in delineating contacts is the entire United States, not merely [the forum state].'" *Meadows*, 817 F.2d at 523 (quoting *Texas Trading & Milling Corp.*, 647 F.2d at 314).[14]

---

[13]    Under the FSIA, personal jurisdiction can exist only if subject-matter exists under § 1330(a) and process is served in accordance with the exclusive service provisions of 28 U.S.C. §1608.  *See Altmann v. Republic of Austria*, 317 F.3d 954, 969 (9th Cir. 2002), *aff'd*, 541 U.S. 677 (2004); *Theo H. Davies & Co., Ltd. v. Republic of the Marshall Islands*, 174 F.3d 969, 974 (9th Cir. 1998).

[14]    A significant number of Ninth Circuit and California District Court opinions interpreting the FSIA rely on the Second Circuit's opinion in *Texas Trading & Milling Corp.*, 647 F.2d at 313 (holding "the safeguards of due process . . . apply to FSIA cases").  *See, e.g., Theo H. Davies & Co., Ltd.*, 174 F.3d at 973 ("We are persuaded that the Second Circuit's analytic framework is the appropriate framework within which to consider the jurisdictional issues in this case"); *Gregorian*, 871 F.2d at 1529.  Recently, however, the Second Circuit overruled *Texas Trading* in *Frontera Resources Azerbaijan Corp. v. State Oil Co. of Azerbaijan Republic*, 582 F.3d 393 (2d Cir. 2009), holding that foreign sovereigns are not entitled to the jurisdictional protections of the Due Process Clause.  While this Court has ruled consistent with the Second Circuit's *Frontera* opinion, *see Cassirer v. Kingdom of Spain*, 461 F. Supp.2d 1157 (C.D.Cal. 2006), *rev'd in part on other grounds,* 580 F.3d 1048 (9th Cir. 2009), Defendant notes that *Frontera* and *Cassirer* involved a sovereign business entity and kingdom, respectively.  Here, Defendant is both a sovereign *and* a person.  It is unclear whether foreign sovereigns are protected by the Constitution, *see, e.g., Doe v. Holy See*, 557 F.3d

1    While the Complaint vaguely alleges some activities conducted by Plaintiff in

2    the United States, actual facts concerning such activities conducted by Defendant

3    are virtually non-existent. [15]   Plaintiff claims that he maintained an office in Santa

4    Barbara from which he performed services for Defendant under the agreement at

5    issue in this case.  (Compl. ¶¶ 146-47.)  However, this generic allegation is not

6    enough.

7    First, Plaintiff's decision to perform his duties from a residence in California

8    does not indicate that Defendant "purposefully avail[ed] himself of the privilege of

9    conducting activities in the forum."  *Yahoo! Inc. v. La Ligue Contra Le Racisme et*

10   *L'Antisemitisme,* 433 F.3d 1199, 1206 (9th Cir. 2006), *cert. denied,* 547 U.S. 1163

11   (2006).  Nor is it enough that Plaintiff is a resident of the United States and that an

12   act outside of the United States imposed an economic burden on him.  *See Thos. P.*

---

14   1066, 1096 (9th Cir. 2009) (*Berzon,* J., dissenting), but as to individuals, which
     Prince Albert is as well, "[i]t is well established that all individuals in the United

15   States - citizens and aliens alike - are protected by the Due Process Clause of the

16   Constitution."  *United States v. Calderon-Segura,* 512 F.3d 1104, 1107 (9th Cir.
     2008), *cert. denied,* 129 S.Ct. 119 (2008); *see also Mathews v. Diaz,* 426 U.S. 67,

17   77 (1976) ("The Fifth Amendment, as well as the Fourteenth Amendment, protects

18   [aliens] from deprivation of life, liberty, or property without due process of law.").
     Thus, even if Due Process concerns are not always implicated in a FSIA case, it is

19   proper for this Court to analyze Defendant's contacts with the United States in the

20   context of the personal jurisdiction requirements outlined in *International Shoe Co.,*
     326 U.S. 310.  This analysis is only necessary if the Court were to find that head-of-

21   state or sovereign immunity did not apply.

22   [15]  Even assuming all of the facts alleged in the Complaint are true, aside from

23   the conclusory claims in ¶¶ 146-47 that from July 2003 to May 2004 and from July
     2006 to March 2008, while in Santa Barbara, Plaintiff performed certain duties

24   under his agreement with Defendant, almost all of the other facts indicate that this

25   work was performed either in Monaco or in other locations outside of the United
     States. (*See, e.g.,* Compl. ¶¶ 98, 102-04, 107, 112, 114-15, 121-22, 130, 135 and

26   138.) Moreover, all of Plaintiff's invoices submitted to Defendant for work

27   performed between August 2003 and March 2008 list Plaintiff's address as London,
     England. (*See* Compl. Exs. A, J.)

28
     DEFENDANT HIS SERENE HIGHNESS PRINCE ALBERT II OF MONACO'S
     MOTION TO DISMISS THE COMPLAINT AND MOTION TO STRIKE

*Gonzalez Corp. v. Consejo Nacional de Produccion de Costa Rica*, 614 F.2d 1247 (9th Cir. 1980). The Ninth Circuit has emphasized that "the unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State." *Id*. at 1251 (quotations omitted).

Second, the existence of a contract with a resident of the forum state is insufficient to create personal jurisdiction over a nonresident. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985). Courts consider negotiations, future consequences, the terms of the contract and the parties' course of dealing when evaluating whether a defendant established minimum contacts within the forum. *Id*. at 479. Here, according to Plaintiff, he was retained by Defendant at a meeting in Monaco in 2002. (Compl. ¶¶ 5, 145). None of the contract negotiations were conducted in the United States and there is no evidence that any course of dealing between Plaintiff and Defendant under the claimed contract occurred in the United States. *See Fujitsu-ICL Systems, Inc. v. Efmark Service Co. of Illinois, Inc*., No. 00-CV-0777 W(LSP), 2000 WL 1409760, at *4 (S.D.Cal. June 29, 2000) (where "[p]laintiff presents no evidence that [d]efendant requested performance of the contracts in California . . . [and] [p]laintiff [does not] contend that the contracts could only have been performed in California" the "[d]efendant's mere knowledge that acts would occur in California does not establish that it purposefully availed itself of the benefits of the forum"); *cf. Data Disc, Inc v. Systems Tech. Assocs. Inc*., 557 F.2d 1280, 1287-88 (9th Cir. 1977) (claim that contract at issue in action for breach was partially negotiated and formed in California weighed in favor of jurisdiction).

To that end, it is clear from the allegations in the Complaint that it is not appropriate to interpret the alleged agreement at issue under California law. Because the alleged oral agreement does not have a choice of law provision, it will be construed according to the locality which has the most significant relationship to

the transaction and the parties. *See* Cal.Civ.Code § 1646 ("A contract is to be interpreted according to the law and usage of the place where it is to be performed; or, if it does not indicate a place of performance, according to the law and usage of the place where it is made."); *see also Frontier Oil Corp. v. RLI Ins. Co.*, 153 Cal.App.4th 1436, 1450, 63 Cal.Rptr.3d 816, 827 (Cal.App. 2 Dist. 2007) ("If no place of performance is expressly stated, *or implied from the terms of the contract*, the law of the place where it was made will govern.") (emphasis in original, quotation omitted). In this instance, Plaintiff was allegedly retained "at a meeting in Monaco, to be the [Defendant's] intelligence advisor" (Compl. ¶ 5), and from the face of the Complaint, the center of gravity for this agreement was clearly Monaco – even if Plaintiff is alleged to have conducted some work while in California or elsewhere.

Finally, Plaintiff maintains that he briefed Defendant from Santa Barbara by "maintaining telephone contact." (Compl. ¶ 146.) But "'use of the mails, telephone, or other international communications simply do not qualify as purposeful activity invoking the benefits and protection of the [forum] state.'" *Peterson v. Kennedy*, 771 F.2d 1244, 1262 (9th Cir.1985), *cert. denied*, 475 U.S. 1122 (1986) (quoting *Thos. P. Gonzalez Corp.*, 614 F.2d at 1254). Thus, there is simply no evidence that Defendant "avail[ed] himself of the privilege of conducting activities" in the United States with respect to the causes of action alleged by Plaintiff or that this claim arises out of any activities conducted by Defendant in the forum. *Yahoo! Inc.*, 433 F.3d at 1206.

It is not reasonable for the U.S. to assert personal jurisdiction in this case. Defendant has not purposefully interjected himself into the forum with respect to any agreement with Plaintiff, and it would be burdensome for Defendant to defend

---

this action in the United States.[16]  Indeed, the allegations in the Complaint make clear that the contract concerns matters that have no relation whatsoever to California or the United States.  According to Plaintiff's Complaint, this case is part of an internecine dispute between the head-of-state of Monaco and his former "chief of intelligence."  It is hard to conceive of a scenario where it would be less appropriate for a dispute to be adjudicated by this Court.[17]

## III.   PURSUANT TO FED. R. CIV. P. 12(F), THE COURT SHOULD STRIKE FROM PLAINTIFF'S COMPLAINT ALL IMMATERIAL, IMPERTINENT AND SCANDALOUS MATTER

Separate and apart from this Court's determination of Defendant's Motion to Dismiss, and so long as the Complaint in this case is under the Court's consideration, Defendant also moves to strike from the Complaint the voluminous immaterial, impertinent, and scandalous matter pursuant to Fed. R. Civ. P. 12(f).  In the Complaint, Plaintiff seeks to justify in advance his obvious pleading offense; he prefaces the exceedingly lengthy recitation of irrelevant and scurrilous material with

---

[16]   *See Asahi Metal Industry Co., Ltd. v. Superior Court of California, Solano County*, 480 U.S. 102, 114 (1987) (noting that "[t]he unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders").

[17]   In addition to the above, Defendant also expressly reserves the right to assert that this Court should dismiss the case under the doctrine of forum non conveniens. "The traditional doctrine of forum non conveniens . . . is still applicable in cases arising under the Foreign Sovereign Immunities Act." *Proyecfin de Venezuela, S.A. v. Banco Industrial de Venezuela, S.A.*, 760 F.2d 390, 394 (2d Cir.1985); *see also Price v. Socialist People's Libyan Arab Jamahiriya*, 294 F.3d 82, 100 (D.C. Cir. 2002) ("the doctrine of *forum non conveniens* remains fully applicable in FSIA cases"); *Monegasque de Reassurances S.A.M. (Monde Re) v. Nak Naftogaz of Ukraine*, 158 F. Supp.2d 377, 382 (S.D.N.Y. 2001), *aff'd*, 311 F.3d 488 (2d Cir. 2002) ("If forum non conveniens were not applicable to actions under the FSIA, the federal courts would effectively be stripped of one tool that helps prevent this country's judicial system from becoming the courthouse to the world, or an international court of claims.").

1   an assertion that this material is necessary "to prove the terms of [the] agreement,

2   [Plaintiff's] performance of his obligations thereunder, and [Defendant's] breach of

3   the agreement." (*See* Compl. ¶ 5.)  This is neither true, sensible nor allowable.

4         The only substantive issues in this case are (i) the existence and terms of the

5   parties' agreement, (ii) the purported non-payment of Plaintiff's compensation for

6   the first quarter of 2008, and (iii) representations by the parties concerning the work

7   to be performed in the first quarter of 2008.  To prevail on his contract claim,

8   Plaintiff must establish that he performed his services during the first three months

9   of 2008, and that Defendant breached his obligation to pay him for that quarter.  To

10  prevail on his misrepresentation claim, Plaintiff must establish, *inter alia*, that

11  Defendant falsely represented that he would pay Plaintiff €40,000 for the first

12  quarter of 2008, with no intention of actually doing so.  The grandiose descriptions

13  of Plaintiff's purported intelligence projects from 2002 to 2007, and the wholly

14  irrelevant details of Defendant's private life, simply have no relevance to any of

15  these questions.

16        Pursuant to the present motion to strike, the following paragraphs of the

17  Complaint are irrelevant and should be removed:  Compl. ¶¶ 8-23 (generally

18  relating to: investigations into corruption and international criminal conduct,

19  meetings with foreign states' representatives); 25-32 (generally relating to:

20  investigations into press leaks and individuals, Defendant's illegitimate daughter,

21  claims of sexual misconduct); 34-45 (generally relating to: investigations into

22  government officials and others, Defendant's illegitimate daughter); 47-113

23  (generally relating to: corruption investigations, meetings with foreign intelligence

24  agencies); 116 (generally relating to: meetings with foreign intelligence agencies);

25  118 (generally relating to: meetings with foreign intelligence agencies); 124

26  (generally relating to: an investigative report); 126-128 (generally relating to:

27  various intelligence investigations); 130-137 (generally relating to: meetings with

28

DEFENDANT HIS SERENE HIGHNESS PRINCE ALBERT II OF MONACO'S
MOTION TO DISMISS THE COMPLAINT AND MOTION TO STRIKE

17

1   foreign intelligence agencies).  Additionally, the following Complaint Exhibits are

2   irrelevant and should be removed: Exhibits D, F, G, H, I.

3   **A.    The Legal Standard**

4   Fed. R. Civ. P. 12(f) allows a court to "strike from a pleading . . . any

5   redundant, immaterial, impertinent, or scandalous matter."  The function of a Rule

6   12(f) motion is "to avoid the expenditure of time and money that must arise from

7   litigating spurious issues by dispensing with those issues prior to trial."  *Sidney-*

8   *Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983).  In the Ninth Circuit,

9   courts may therefore grant a motion to strike "for the purpose of streamlining the

10   ultimate resolution of the action and focusing the jury's attention on the real issues

11   in the case."  *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1528 (9th Cir. 1993), *rev'd*

12   *on other grounds,* 510 U.S. 517, 534-35 (1994).

13   "Scandalous" matter includes allegations or materials that "improperly cast[]

14   a derogatory light on someone, usually a party."  *Wilkerson v. Butler*, 229 F.R.D.

15   166, 170 (E.D. Cal. 2005).  Allegations may also be stricken as scandalous if they

16   serve "'no purpose except to inflame the reader.'"  *Impulsive Music v. Pomodoro*

17   *Grill, Inc.*, No. 08-CV-6293, 2008 WL 4998474, at *2 (W.D.N.Y. Nov. 19, 2008)

18   (quoting *Morse v. Weingarten*, 777 F. Supp. 312, 319 (S.D.N.Y. 1991)).  Where

19   scandalous material is prejudicial to defendants, it may be stricken even where it is

20   arguably relevant to Plaintiff's claims.  *See, e.g., Wilkerson*, 229 F.R.D. at 170

21   (2005) ("Allegations may be stricken as scandalous if the matter bears no possible

22   relation to the controversy *or* may cause the objecting party prejudice.") (emphasis

23   added; citation omitted); *Parrish v. Sollecito*, No. 01 Civ.5420, 2002 WL 1072227,

24   at *1 (S.D.N.Y. May 28, 2002) ("It is also appropriate to strike matters whose

25   materiality is highly unlikely *or* whose effect would be prejudicial.") (emphasis

26   added).

27   "Immaterial matter," in turn, is defined as "that which has no essential or

28

DEFENDANT HIS SERENE HIGHNESS PRINCE ALBERT II OF MONACO'S
MOTION TO DISMISS THE COMPLAINT AND MOTION TO STRIKE

18

1    important relationship to the claim for relief or the defenses being pleaded."

2    *Fantasy, Inc.*, 984 F.2d at 1527 (quotation omitted).  Finally, "impertinent matter" is

3    matter that "do[es] not pertain to and [is] not necessary to resolve the issues in

4    question."  *Id.* (quotation omitted); *see also Montagne v. Ag Venture Fin. Servs.,*

5    *Inc.*, Adv. No. 08-1022, 2009 WL 32394, at *3-*4 (Bankr. D. Vt. Jan. 5, 2009)

6    (striking materials that "appear more directed toward tainting the character of

7    [Defendants] than advancing the merits of the claims") (quotation omitted).

8    "Superfluous historical allegations are a proper subject of a motion to strike."

9    *Fantasy, Inc.*, 984 F.2d at 1527.

10    Resolution of a motion to strike pursuant to Rule 12(f) requires that a court

11    first "frame" the issues:  in other words, the court begins by determining what

12    questions are actually at issue in the action.  *See, e.g., Parrish*, 2002 WL 1072227,

13    at *1 ("Before deciding whether to strike an allegation, a Court must frame the

14    issues."); *Burger v. Health Ins. Plan of Greater New York*, 684 F. Supp. 46, 52

15    (S.D.N.Y. 1988) ("To properly decide a motion to strike, the issues must be

16    framed"); *Fantasy, Inc.*, 984 F.2d at 1528 (noting need to focus on "the real issues

17    in the case").  The court then proceeds to assess whether the disputed matter is

18    impertinent or immaterial to the determination of these questions, or scandalous or

19    otherwise unduly prejudicial.  *See, e.g., Burger*, 684 F. Supp. at 52.

20    In this case (assuming the Court permits the case to move forward) the issues

21    to be decided center on Plaintiff's compensation for the first quarter of 2008:

22    whether Defendant's alleged failure to make payment constituted a breach of

23    contract, and whether Defendant falsely represented (with no present intent to do so)

24    that he would make this payment.  Whether certain portions of the Complaint should

25    be stricken, then, depends on whether they "pertain to" or are "necessary to resolve

26    these questions," (*Montagne*, 2009 WL 32394, at *3-*4), or whether they were

27    instead included solely to inflame the reader and to cast Defendant in a derogatory

28

DEFENDANT HIS SERENE HIGHNESS PRINCE ALBERT II OF MONACO'S
MOTION TO DISMISS THE COMPLAINT AND MOTION TO STRIKE

19

1   light. *Wilkerson*, 229 F.R.D at 170; *Impulsive Music*, 2008 WL 4998474, at *2;

2   *Burger*, 684 F. Supp. at 52-53.

3   **B.    Issues To Be Decided**

4   As to Plaintiff's breach of contract claim, the questions to be decided center

5   on the terms of the parties' purported agreement, Plaintiff's performance of his

6   contractual obligations during the first quarter of 2008 (the three months for which

7   payment is in dispute), and Defendant's alleged failure to make payment for that

8   quarter. (Compl. ¶¶ 144-48.) As to the misrepresentation claim, the relevant issues

9   center on whether Defendant falsely represented that he would pay Plaintiff €40,000

10  for his services during the first quarter of 2008, and whether the representation was

11  made with no present intention of doing so. (*Id.* ¶¶ 149-57.)

12  Allegations relating to Plaintiff's "investigations" and Defendant's personal

13  activities have no place in this Complaint. These allegations appear to have been

14  included solely to elicit media interest, to cast a "derogatory light" on Defendant,

15  and to create extortive pressure on Prince Albert; they should therefore be stricken.[18]

16  *See Clark v. Goodwill Industries of Hawaii, Inc.*, CV. No. 09-00184 DAE-LEK,

17  2009 WL 3050277, at *9-*10 (D. Haw. Sept. 21, 2009) (the court struck from an

18  employment discrimination complaint allegations that "reveal[ed] a sizable amount

19  of information about [individuals] not party to this case," none of which was

20  "related to [plaintiff's] causes of action" and the court admonished the plaintiff for

21  "unnecessarily reveal[ing] private information" about individuals not party to the

22  action); *Wilkerson*, 229 F.R.D. at 170; *see also, e.g.*, *Cairns v. Franklin Mint Co.*,

23  24 F. Supp. 2d 1013, 1037 (C.D. Cal. 1998); *Morse*, 777 F. Supp. at 319;

24

25  [18]    After filing the complaint, Plaintiff granted numerous press interviews. *See*
*Prince Albert's secrets under threat from rebel spy,* UK Times Online, October 25,
26  2009, at http://www.timesonline.co.uk/tol/news/world/europe/article6888916.ece;
*Menaces sur le prince,* Point De Vue, November 4-10, 2009; *Menaces Sur Albert,*
27  Paris Match, November 5-11, 2009.

28

DEFENDANT HIS SERENE HIGHNESS PRINCE ALBERT II OF MONACO'S
MOTION TO DISMISS THE COMPLAINT AND MOTION TO STRIKE

1   *Skadegaard v. Farrell*, 578 F. Supp. 1209, 1221 (D.N.J. 1984).

2       Because the vast majority of the allegations serve no legitimate purpose, they

3   should be stricken pursuant to Fed. R. Civ. P. 12(f), as "spurious, redundant,

4   immaterial, [and] scandalous." *Clark*, 2009 WL 3050277, at *9; *see also Burger*,

5   684 F. Supp. at 52 (striking allegations as to illegal billing activities that bore only

6   tenuous relation to merits of employment discrimination lawsuit).

7                                **CONCLUSION**

8
9       WHEREFORE, Defendant respectfully requests that this Court grant his

10  motions to dismiss the Complaint and to strike immaterial matter.

11  Dated:  November 10, 2009

12                                      Respectfully submitted,

13

14                                      _____

15                                      Stanley S. Arkin (Cal. Bar No. 058951)
                                        sarkin@arkin-law.com
16                                      ARKIN KAPLAN RICE LLP
                                        590 Madison Avenue, 35th Floor
17                                      New York, New York  10022
                                        (212) 333-0200
18

19                                      3530 Bayberry Lane
                                        Malibu, California 90265
20                                      (917) 250-8988

21
22                                      *Attorneys for Defendant His Serene Highness*
                                        *Prince Albert II of Monaco aka Albert*
23                                      *Alexandre Louis Pierre Grimaldi*

24

25

26

27

28

---

DEFENDANT HIS SERENE HIGHNESS PRINCE ALBERT II OF MONACO'S
MOTION TO DISMISS THE COMPLAINT AND MOTION TO STRIKE